UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT SILK,<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>HCMC LEGAL, INC., HC2, INC., d/b/a HIRE<br>COUNSEL, and MCDERMOTT WILL & EMERY LLP,<br><br>　　　　　　Defendants. | 20-CV-10389<br><br><br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

　　　Plaintiff Scott Silk, by and through the undersigned counsel, alleges upon personal

knowledge as to some and information and belief as to the rest, as follows:

**NATURE OF THE ACTION**

1.　　This case arises under the Americans with Disabilities Act of 1990, as amended by

the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq. ("ADAA") for causes of action

sounding in employment discrimination, retaliation, and failure to accommodate.

2.　　This case also arises under the New York City Human Rights Law, § 8-101 et seq., as

amended, ("NYCHRL") for causes of action sounding in employment discrimination,

retaliation, failure to accommodate, and publication of discriminatory job advertisements.

3.　　Plaintiff Silk seeks declaratory and injunctive relief, as well as compensatory and

punitive damages, interest, reasonable attorneys' fees and costs under the applicable civil

rights laws.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

6.      The venue of this action is proper under 28 U.S.C. § 1391(b)(1) and (2).

7.      Plaintiff Silk has satisfied all pre-conditions to the commencement of this action.

## THE PARTIES

*Plaintiff Scott Silk*

8.      Plaintiff Scott Silk ("Silk") maintains residence and citizenship in New York.

9.      Plaintiff Silk has a "disability" as that term is defined under the ADAA because he suffers from asthma, "a physical...impairment that substantially limits one or more major life activities", 42 U.S.C. § 12102(1)(A), including the "major life activities [of]...breathing", 42 U.S.C. § 12102(2)(A) and "the operation of...respiratory...functions", 42 U.S.C. § 12102(2)(B), and because of "a record of such an impairment", 42 U.S.C. § 12102(1)(B), and because he is "regarded as having such an impairment" 42 U.S.C. § 12102(3) by Defendants.

10.     Plaintiff Silk has an "disability" as that term is defined by the NYCHRL because he suffers from asthma, "an impairment of...the respiratory system." N.Y.C. Admin. Code § 8-102.

*Defendant HCMC Legal, Inc.*

11.     Defendant HCMC Legal, Inc. is a corporation organized under the laws of the State of New York with a principal place of business located at 360 Lexington Ave, Suite 1100

New York, New York 10017.

12.     Defendant HCMC Legal, Inc. is a "covered entity" as that term is defined by the

ADAA, 42 U.S.C. § 12111(2), because it is an "employer" "engaged in an industry affecting

commerce who has 15 or more employees for each working day in each of 20 or more

calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A).

13.     Defendant HCMC Legal, Inc. is an "employer" as that term is defined by the

NYCHRL because it employed more than four persons at all times during the period

beginning twelve months before the start of an unlawful discriminatory practices and

continuing through the end of such unlawful discriminatory practices alleged herein.

N.Y.C. Admin. Code § 8-102.

14.     Defendant HCMC Legal, Inc. had the ability to control the terms and conditions of

Plaintiff Silk's employment with its co-Defendants, including the ability to set his rate of

pay, work location, work duties, and terminate him from employment.

*Defendant HC2, Inc. d/b/a Hire Counsel*

15.     Defendant HC2, Inc. d/b/a Hire Counsel is a corporation organized under the laws of

the State of New York with a principal place of business located at 360 Lexington Ave, Suite

1100 New York, New York 10017.

16.     Defendant HC2, Inc. d/b/a Hire Counsel is a "covered entity" as that term is defined

by the ADAA, 42 U.S.C. § 12111(2), because it is an "employer" "engaged in an industry

affecting commerce who has 15 or more employees for each working day in each of 20 or

more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A).

17.     Defendant HC2, Inc. d/b/a Hire Counsel is an "employer" as that term is defined by the NYCHRL because it employed more than four persons at all times during the period beginning twelve months before the start of an unlawful discriminatory practices and continuing through the end of such unlawful discriminatory practices alleged herein. N.Y.C. Admin. Code § 8-102.

18.     Defendant HC2, Inc. d/b/a Hire Counsel had the ability to control the terms and conditions of Plaintiff Silk's employment with its co-Defendants, including the ability to set his rate of pay, work location, work duties, and terminate him from employment.

19.     Defendant HCMC Legal, Inc. and Defendant HC2, Inc. d/b/a Hire Counsel are hereafter collectively referred to as "Hire Counsel".

*Defendant McDermott Will & Emery LLP*

20.     Defendant McDermott Will & Emery LLP is a limited liability partnership organized under the laws of the State of Illinois with a principal place of business located at 340 Madison Ave, New York, New York 10173.

21.     Defendant McDermott Will & Emery LLP is a "covered entity" as that term is defined by the ADAA, 42 U.S.C. § 12111(2), because it is an "employer" "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5)(A).

22.     Defendant McDermott Will & Emery LLP is an "employer" as that term is defined by the NYCHRL because it employed more than four persons at all times during the period beginning twelve months before the start of an unlawful discriminatory practices and

continuing through the end of such unlawful discriminatory practices alleged herein. N.Y.C. Admin. Code § 8-102.

23.     Defendant McDermott Will & Emery LLP had the ability to control the terms and conditions of Plaintiff Silk's employment with its co-Defendants, including the ability to set his rate of pay, work location, work duties, and terminate him from employment.

24.     Defendant McDermott Will & Emery LLP, Defendant HCMC Legal, Inc., and Defendant HC2, Inc. d/b/a Hire Counsel are hereafter collectively referred to as "Defendants".

## **FACTS**

25.     On December 12, 2017, Plaintiff Scott Silk began employment with Defendant HCMC Legal, Inc., Defendant HC2, Inc., d/b/a Hire Counsel (together "Hire Counsel"), and McDermott Will & Emery LLP ("McDermott") (collectively "Defendants") as a document review attorney.

26.     Initially, McDermott attorneys Margaret Elliot and Yelena Bekker assigned Plaintiff's day-to-day tasks and supervised those tasks.

27.     In early February 2018, it is believed that co-worker perfume at the worksite where Plaintiff Silk initially worked (48 Wall Street) began triggering Plaintiff Silk's asthma. This substantially limited Plaintiff Silk's ability to breathe normally at this worksite.

28.     In accordance with the employment guidelines of Hire Counsel, Plaintiff Silk first notified Hire Counsel's Associate Director John Inderman verbally and by e-mail that he believed his co-workers' perfume was triggering his asthma and substantially limiting his

ability to breathe normally while working at the worksite.

29.      In response, it is believed that Inderman notified Defendant McDermott, who in turn, directed that Plaintiff Silk's co-workers refrain from wearing perfume at Plaintiff's worksite.

30.      However, it is believed that few of Plaintiff Silk's co-workers actually refrained from wearing perfume at Plaintiff's worksite.

31.      As a result, Plaintiff Silk's asthma continued to be triggered when he worked at the worksite, substantially limiting his ability to breathe normally.

32.      Thereafter, Defendant McDermott transferred Plaintiff Silk to another room in the same office building, and as a result, Plaintiff Silk was able to breathe normally while working at his worksite.

33.      On May 15, 2018, having performed to Defendant McDermott's satisfaction, and at the recommendation of McDermott attorney Yelena Bekker, Defendant McDermott assigned Plaintiff Silk to work at the 340 Madison Avenue McDermott office.

34.      As part of this new assignment, Defendant McDermott assigned Plaintiff Silk new McDermott supervisors: Jennifer Contegiacomo, Ashley Van Hoff, and Joseph Hoff.

35.      Defendant McDermott supervisors Contegiacomo, Van Hoff, and Hoff were exclusively responsible for assigning Plaintiff Silk's day-to-day tasks and supervising those day-to-day tasks at the 340 Madison Avenue McDermott office.

36.      Initially, Plaintiff Silk worked alongside approximately ten attorneys (including Plaintiff Silk) and two paralegals in cubicles in a large room on the 14th floor of the 340 Madison Avenue McDermott office.

37.     However, shortly after being re-assigned to 340 Madison Avenue McDermott office, Plaintiff Silk developed a chronic cough which was often accompanied by a shortness of breath, substantially limiting his ability to breathe normally.

38.     Plaintiff Silk noticed that this chronic cough was more frequent and intense when he worked in the 340 Madison Avenue McDermott office than when he was at home.

39.     The chronic cough became so frequent and intense that on February 12, 2019, while working at the 340 Madison Avenue McDermott office, co-worker Willena Nanton abruptly approached Plaintiff Silk and demanded that he "stop coming to work sick" because she claimed she feared she would get sick, too.

40.     In response, Plaintiff Silk explained to Nanton that his chronic cough was not a symptom of a communicable disease, but rather a symptom of his asthma.

41.     However, Nanton was not satisfied with this explanation, and continued to berate and harass Plaintiff Silk.

42.     Finally, having no other choice, Plaintiff Silk disclosed to Nanton that his doctor had assured him his chronic cough was not related to any communicable disease.

43.     Paralegal Trevor McGuire witnessed the entire foregoing incident between Plaintiff Silk and Nanton.

44.     After work on February 12, 2019, Plaintiff Silk, still shaken by the berating and harassment by Nanton, reported the foregoing incident to Hire Counsel's Associate Director John Inderman and asked Inderman to intervene.

45.     In reply, Inderman initially refused to intervene, citing "HIPAA considerations".

46.     But later, Inderman agreed to counsel Nanton after Plaintiff Silk wrote to Inderman

7

that he believed Nanton's actions constituted unlawful harassment under the ADAA.

47.     Following this incident with Nanton, Plaintiff Silk was approached by at least three other co-workers, including paralegal Seth Cramer, all of whom expressed to Plaintiff Silk that they believed he had a serious communicable disease, apparently evidenced by his frequent and intense cough.

48.     As a result, Plaintiff Silk began experiencing intense anxiety, shame, and humiliation whenever he coughed at the 340 Madison Avenue McDermott office.

49.     On March 14, 2019, while working at the 340 Madison Avenue McDermott office, Plaintiff Silk's asthma was suddenly triggered by an unusual odor.

50.     As a result, Plaintiff Silk began coughing uncontrollably in the presence of his co-workers., causing him intense anxiety, embarrassment, shame, and humiliation.

51.     In response to Plaintiff Silk's uncontrollable coughing, Plaintiff's McDermott supervisor Van Hoff segregated Plaintiff from his co-workers.

52.     McDermott supervisor Reed moved Plaintiff's desk to another location on the 14th floor. However, this new desk location on the 14th floor did not remediate Plaintiff Silk's cough.

53.     In late March 2019, Plaintiff Silk was summoned into McDermott supervisor Contegiacomo's office at 340 Madison Avenue.

54.     Contegiacomo explained to Plaintiff Silk that she was receiving complaints about his cough.

55.     Plaintiff Silk again explained that the cough was due to his asthma, and that the cough was more intense and frequent when he worked at 340 Madison Avenue McDermott

office, likely due to co-worker perfume.

56.     Contegiacomo and Plaintiff Silk then discussed how to accommodate Plaintiff Silk's

asthma-related disability.

57.     Plaintiff Silk suggested that he be permitted to work remotely, as all of his job duties

could be performed remotely, and Contegiacomo said she would consider Plaintiff Silk's

proposed accommodation.

58.     Contegiacomo then asked if anyone had approached Plaintiff Silk in an

"inappropriate manner" regarding his cough and Plaintiff Silk replied that Nanton had

done so.

59.     Within a few days of this meeting, Plaintiff Silk was again summoned to meet with

Contegiacomo in her office. Van Hoff was also present. Contegiacomo informed Plaintiff

Silk that as an accommodation to his disability, Defendant McDermott would permit him

to work from home on a part-time basis and Plaintiff Silk would work in the 340 Madison

Avenue McDermott office at least five hours a day each Monday, Wednesday and Friday.

60.     As part of the arrangement, Contegiacomo also required Plaintiff Silk to be logged

into McDermott's instant messenger program during working hours. However, because

Plaintiff Silk did not have a McDermott-issued PC, the McDermott instant messenger

program was not initially compatible with his PC. Finally, Contegiacomo also required

Plaintiff Silk to attend all McDermott team meetings in-person regardless of the day of the

week, though these were infrequent occurrences, no more than one every three or four

months.

61.     Thereafter, from late March to mid-August 2019, Plaintiff Silk worked in-office at

the 340 Madison Avenue McDermott office five hours each Monday, Wednesday, and Friday, and entirely remotely for the remainder of the week.

62.     Following the second meeting between Contegiacomo and Plaintiff Silk, a team meeting was held during which Contegiacomo made indirect reference to the incident between Nanton and Plaintiff Silk, without naming either party.

63.     During that meeting, Contegiacomo also discussed permanent employment opportunities at McDermott. In specific, Contegiacomo stated that not everyone would be offered a permanent employment opportunity at McDermott, and that everyone was encouraged to seek other positions outside the company, suggesting that Contegiacomo was signaling to Plaintiff Silk to find other work because of her difficulty in dealing with his disability and that it was unlikely that Plaintiff Silk would be chosen for a permanent position because of his disability even if he did remain at McDermott.

64.     Defendants did not provide Plaintiff with a written job description regarding his employment at the 340 Madison Avenue McDermott office.

65.     Each in-office job duty that Plaintiff Silk was assigned and performed at the 340 Madison Avenue McDermott office could be and was performed by him remotely.

66.     In-office, document review by Plaintiff Silk was accomplished *via computer.*

67.     In-office, preparation of exhibits by Plaintiff Silk was accomplished *via computer*.

68.     In-office, most substantive communication by and between Plaintiff Silk and his McDermott supervisors was accomplished *via computer or telephone.*

69.     When compared to when he worked remotely, each time Plaintiff Silk was required

to work from the 340 Madison Avenue McDermott office, his coughing and shortness of breath increased in intensity and frequency, substantially limiting his ability to breathe normally.

70.     Further, each time Plaintiff Silk was required to work in the 340 Madison Avenue McDermott office, the coughing and loss of oxygen due to shortness of breath caused Plaintiff Silk to experience frequent headaches and muscle pain and soreness in his chest and abdomen.

71.     In addition, each time Plaintiff Silk was required to work from the 340 Madison Avenue McDermott office, he experienced intense anxiety, shame, embarrassment, and humiliation because of his co-workers' animosity and unwarranted fears about his disability.

72.     Between May 9 and June 30, 2019, Plaintiff Silk took leave from work, approved by Defendants, to care for his father who had become ill. And, Plaintiff Silk returned to work from that leave on Monday, July 1, 2019.

73.     On July 15, 2019, Plaintiff Silk wrote to his McDermott supervisors Hoff, Van Hoff, Reed and Contegiacomo asking that they reconsider his request to work remotely on a full-time basis because his asthma-related symptoms persisted whenever he worked in the 340 Madison Avenue McDermott office, including intense and painful coughing, shortness of breath, headaches and muscle pain, which substantially limited his ability to breathe normally.

74.     Although Plaintiff Silk had previously requested and received disability-related accommodation from his McDermott supervisors Hoff, Van Hoff, Reed and Contegiacomo,

they did not reply to this request.

75.     Instead, on July 25, 2019, Plaintiff Silk was contacted via e-mail by Patti Ayala, Vice President of Human Resources and Administration of Hire Counsel and Mestel & Company, both subsidiaries of HCMC Legal, Inc.

76.     Ayala's e-mail requested a telephone call with Plaintiff Silk to discuss his "request regarding working remotely" and Plaintiff Silk replied within a few minutes to this e-mail, and Ayala called him that afternoon.

77.     Ayala begun the telephone call by stating that working remotely full-time was "not an option", but Ayala did not explain why.

78.     Instead, Ayala suggested Plaintiff Silk use an air purifier in the 340 Madison Avenue McDermott office, which Plaintiff agreed to try.

79.     Ayala then told Plaintiff Silk to remain on the part-time remote work schedule until further notice.

80.     Without explanation, Ayala also instructed Plaintiff Silk to speak only with Ayala from that moment forward regarding the request for accommodation and to no longer discuss anything with his McDermott supervisors regarding his accommodation request.

81.     The next day, on July 26, 2019, Ayala e-mailed Plaintiff Silk reiterating her direction for him to remain on the part-time remote work schedule until further notice. Ayala further stated that he would be provided with an air purifier to use while in the 340 Madison Avenue McDermott office. Ayala also provided him with a "medical inquiry form" to be completed by his physician.

82.     On July 31, 2019, while Plaintiff was in the 340 Madison Avenue McDermott office,

Contegiacomo informed Plaintiff Silk that she was going to move him to a "less trafficked area".

83.    On August 1, 2019, Plaintiff Silk's McDermott supervisor Reed e-mailed his entire team with the subject line: "Exciting IT Announcement - New Remote Desktop".

84.    McDermott supervisor Reed's e-mail went on to state that McDermott's upgraded remote desktop application would now allow workers to be signed into Jabber, McDermott's instant messaging system, while working remotely.

85.    McDermott supervisor Reed's e-mail continued on to say the following:

> As a reminder, remote work is only for extraordinary situations with permission from your supervisor. It is not a substitute for working in the office. Starting next week, if you are working remotely you must be signed into Jabber.

86.    In other words, Defendant McDermott permitted its document review attorneys, including Plaintiff Silk, to work remotely.

87.    And further, Defendant McDermott did not view working in-office as an essential job function of its document review attorney positions.

88.    On August 7, 2019, Plaintiff Silk returned the "medical inquiry form" filled out by his physician to Ayala. Where the form asked for recommendations for possible accommodations, Plaintiff Silk's physician wrote:

> "Avoidance of the environment which precipitates the cough paroxysms" and "Employee to work from home."

89.    On August 8, 2019, Ayala telephoned Plaintiff Silk.  Ayala began the call by stating, yet again, that working remotely full-time was not an option, but again did not explain why, and despite the fact that Defendant McDermott permitted its workers to work

remotely and did not view working in-office as an essential job function.

90.    Without substantive explanation, Ayala directed Plaintiff to cease working remotely and return to work full-time in-office once the air purifier was delivered to the 340 Madison Avenue McDermott office.

91.    Further, during the call, Ayala repeatedly asked Plaintiff Silk what he used to purify the air in his home, and he explained to Ayala each time that he did not need to purify the air in his home as his home did not contain anything which triggered his asthma.

92.    Plaintiff Silk further stated on the call that on the rare occasions when his asthma was triggered in his home, he was able to open a window to get fresh air into his home. To this, Ayala stated that opening the windows was not an option at the 340 Madison Avenue McDermott office.

93.    Ayala also asked what Plaintiff Silk did while not in the 340 Madison Avenue McDermott office or at home to prevent his asthma attacks, and Plaintiff Silk repeated that avoiding the triggers was really the only solution he found to be effective.

94.    Further, Plaintiff Silk went on to say that his Albuterol inhaler worked well outside of the office when he could use it after getting away from whatever was triggering him, but that he received little to no relief when using his inhaler in the 340 Madison Avenue McDermott office.

95.    Ayala ended the call by asking for Plaintiff Silk to e-mail his opinion regarding a specific air purifier (a Medify MA-40 Medical Grade H13 True HEPA Air Purifier) once Plaintiff Silk had viewed the website page for it.

96.    Thereafter, Plaintiff Silk sent a follow-up e-mail to Ayala reiterating that he had no

prior experience with air purifiers, but that the purifier proposed by Ayala looked like a good one.

97.    On August 12, 2019, while at the 340 Madison Avenue McDermott offices, Contegiacomo directed Plaintiff Silk to move to another cubicle in a different hallway on the 14th floor.

98.    The air purifier was apparently delivered that same day, although Plaintiff Silk was unaware of that fact until returning to work in the office on August 14.

99.    Thereafter, on August 15, 2019, per the direction of Ayala, Plaintiff Silk returned to working full-time in-office, at the 340 Madison Avenue McDermott office.

100.    On August 21, 2019, Plaintiff Silk e-mailed Ayala expressing appreciation for the air purifier, but stating that the purifier was not having the desired effect, as the frequent, intense, and painful coughing, shortness of breath, and accompanying headaches, chest pains and muscle soreness persisted when in-office, substantially limiting his ability to breath normally.

101.    As an alternative, Plaintiff Silk suggested that the purifier might work better in an enclosed space rather than in a cubicle in a hallway.

102.    Plaintiff Silk ended his e-mail to Ayala by saying "Currently, Hire Counsel and McDermott are requiring that I come into the office where it is known that I will experience asthma attacks. I cannot continue to just suffer through these attacks on a daily basis. I am requesting the ability to work entirely from home as an *interim* accommodation unless and until another idea is put forth."

103.    Plaintiff Silk went on, "If there would be some hardship to Hire or McDermott as a

result of this accommodation, please let me know what it is so I can attempt to propose a different accommodation. As before, I am willing to come into the office for any in-person meetings that are necessary."

104.    And thereafter, Plaintiff Silk continued to report to the 340 Madison Avenue McDermott office on a daily basis.

105.    And as a result, Plaintiff Silk continued to experience shortness of breath, frequent, intense, and painful coughing, headaches, muscle pain and soreness in his chest and abdomen, substantially limiting his ability to breath normally.

106.    Further, as a result, Plaintiff Silk continued to experience intense anxiety regarding his inability to breathe, and intense anxiety, shame, embaressment, and humiliation because of his coworkers' animosity toward his disability.

107.    In addition, because it became increasingly apparent to Plaintiff Silk that Ayala was not taking Plaintiff's asthma-relate symptoms seriously, especially considering that Defendant McDermott supervisor Reed's August 1, 2019 e-mail expressly stated that Defendant McDermott permitted remote work, Plaintiff Silk experienced intense anxiety regarding their further interactions.

108.    On August 23, 2019, Ayala responded to Plaintiff Silk's most recent e-mail of August 21 regarding the above, "Scott--I want to acknowledge receipt of your email. I will review and follow up."

109.    Later that day, Ayala attempted to contact Plaintiff Silk via telephone and left a voicemail asking about Plaintiff's ability to have a call on Monday, August 26, 2019 regarding his most recent request to work remotely in the interim, but his phone had

broken and he was not aware of the proposed call until Ayala e-mailed Plaintiff Silk on the

evening of Tuesday, August 27. In the e-mail, she wrote that she had just left another

voicemail asking about Plaintiff Silk's availability for a call.

110.    Plaintiff Silk checked his voicemail from another phone and heard both messages

left by Ayala.

111.    Plaintiff Silk then immediately e-mailed Ayala stating that he could be available at

any time after 10 am on August 28, 2019.

112.    On August 28, before 10 am, Plaintiff received a call from Ayala, but he missed her call

because he was getting ready for work.

113.    Shortly thereafter, Plaintiff Silk received an e-mail from Ayala stating that he and the

air purifier were going to be moved to space with a door.

114.    Upon arriving at work that day, Plaintiff Silk found that his desk had been moved

into a small room located inside of another room Plaintiff had initially occupied when he

was first re-assigned to the 340 Madison Avenue McDermott office.

115.    Once settled in, Plaintiff Silk replied to Ayala's e-mail stating that he was still

available for a call later that day, but Ayala did not call that day.

116.    Instead, Ayala e-mailed that afternoon stating, "Please note that [the new desk

location] has been made available to you for the time being but may be a temporary

solution should constrains [sic] arise in the future regarding room assignments. To be

proactive, we will continue to work with you to the extent possible to explore alternatives

should the space no longer be available."

117.    Ayala' e-mail went on to say, "If we can find you a position that is similar and offers

the possibility to work remotely would you be interested?"

118.    Plaintiff Silk replied to Ayala's e-mail later that day stating "Assuming this current setup will be effective...I would prefer stay at this position at McDermott's offices. If I continue to have trouble breathing, or if space becomes an issue for McDermott, I would be open to a different remote position which will be of a similar duration and which has the same or better rate of pay. Otherwise, there's no reason I couldn't continue to perform my current duties remotely, just as I've done in the past."

119.    Because working hours beyond that which were expected of a document review attorney such as Plaintiff Silk was encouraged, appreciated, and rewarded by McDermott and Hire Counsel, and because Plaintiff Silk was not paid holiday or vacation pay, from September 3 to September 5, 2019, Plaintiff Silk worked 9.5 hours each day to attempt to make up for the 8 hours missed on Labor Day.

120.    On September 6, 2019 Plaintiff Silk e-mailed Ayala to say that despite the most recent arrangement at the new McDermott office, he was still coughing intensely, frequently and painfully, among other things.

121.    Plaintiff Silk further stated that he would be willing to perform his duties remotely as an interim solution until he could consult with a doctor about effective and reasonable accommodations that would allow him to work in-office, and he asked Ayala to let him know if that would be acceptable.

122.    Although McDermott and Hire Counsel ordinarily encouraged, appreciated, and rewarded their document review attorneys whom worked more than they were expected to, on September 10, 2019, Ayala e-mailed Plaintiff Silk stating "It's my understanding that

18

you took it upon yourself to work extra hours each day to compensate for Labor Day which could have been a contributing factor to a long day and not feeling well. Please confirm why each day last week was an extended work day if no [sic] required you to work extra hours or to be in the office."

123.    Plaintiff Silk replied to Ayala on September 11, 2019, stating that although his coughing and shortness of breath was slightly more severe and lasted slightly longer as a result of his extended work days, the symptoms were not different than what he had experienced nearly every day he was in the office over the previous year and a half. He went on to explain that his McDermott supervisor Contegiacomo had in the past encouraged he and his co-workers to work hours beyond that which were expected of them.

124.    Plaintiff Silk then ended the e-mail to Ayala stating, "I am still requesting that Hire Counsel and McDermott accommodate my disability… I have done my job remotely in the past, and there's nothing I've ever been tasked with by McDermott that I've done at the office that I've not also done from home."

125.    The next day, on September 12, 2019, Ayala responded to Plaintiff Silk stating, "I'm sorry to hear that none of the accommodations that we and McDermott have provided have enabled you to work on site, which is an essential function of your job".

126.    *Inexplicably*, Ayala's e-mail went on to state, "As a result, it is not possible to work from home on a full-time basis, as you have requested" and that Plaintiff Silk would no longer be needed at McDermott.

127.    Ayala's e-mail further stated that she would "look for other positions *not located at*

*McDermott* that align with your considerable skills, and we also encourage you to do so, as well", indicating that *Defendant McDermott* had made the decision to terminate Plaintiff's employment.

128.   Beginning on approximately March 22, 2020 to present date, Defendants have permitted its document review attorneys in New York City to work entirely remotely from home.

129.   Following Plaintiff Silk's termination and up until March 22, 2020, Hire Counsel job advertisements for document review attorneys began using the phrase "must work on site" for positions that Plaintiff Silk could perform remotely.

130.   These foregoing job advertisements discouraged and prohibited Plaintiff Silk and other similarly disabled people from applying or requesting such accommodations related to disability.

131.   For example, on September 27, 2019, Plaintiff received an e-mail from a "hirecounsel.com" e-mail address advertising a document review attorney position Plaintiff was otherwise qualified for that stated "must work on site".

132.   As a result of the foregoing employment discrimination, retaliation, failure to accommodate, and publication of discriminatory job advertisements, Plaintiff Silk suffered lost wages, anxiety, shame, embarrassment, humiliation, and loss to his professional reputation.

### **FIRST CAUSE OF ACTION**
Unlawful and Intentional Disability Discrimination
Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008,
42 U.S.C. § 12101 et seq.

20

As Against All Defendants

133.   Plaintiff realleges and incorporates the foregoing allegations stated above herein.

134.   Plaintiff is a person with a disability within the meaning of the ADAA because

Defendants perceived him as a person with a disability as those terms are defined by the

law.

135.   Plaintiff is also a person with a disability within the meaning of the ADAA because

he has an impairment of his bodily systems as those terms are defined by the law.

136.   Plaintiff was able to perform the essential functions of his job with Defendants with

a reasonable accommodation.

137.   By the foregoing conduct, Defendants unlawfully and intentionally discriminated

against Plaintiff because of disability within the meaning of the ADAA.

138.   As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well

as all other relief available under the law.

**SECOND CAUSE OF ACTION**
Unlawful and Intentional Retaliation
Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008,
42 U.S.C. § 12101 et seq.
As Against All Defendants

139.   Plaintiff realleges and incorporates the foregoing allegations stated above herein.

140.   By the foregoing conduct, Defendants retaliated against Plaintiff for engaging in

activity protected by the ADAA known to Defendants.

141.   As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well

as all other relief available under the law.

**THIRD CAUSE OF ACTION**

Failure to Accommodate
Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008,
42 U.S.C. § 12101 et seq.
As Against All Defendants

142.    Plaintiff realleges and incorporates the foregoing allegations stated above herein.

143.    By the foregoing conduct, Defendants failed to accommodate Plaintiff's disability

known to them in a reasonable and effective manner that would pose no undue hardship

upon Defendants by permitting him to work remotely.

144.    As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well

as all other relief available under the law.

### FOURTH CAUSE OF ACTION

Unlawful and Intentional Disability Discrimination
New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of
2005, N.Y.C. Admin. Code § 8-101 et seq.
As Against All Defendants

145.    Plaintiff realleges and incorporates the foregoing allegations stated above herein.

146.    Plaintiff is a person with a disability within the meaning of the NYCHRL because

Defendants perceived him as a person with a disability as those terms are defined by the

law.

147.    Plaintiff is also a person with a disability within the meaning of the NYCHRL

because he has an impairment of his bodily systems as those terms are defined by the law.

148.    By the foregoing conduct, Defendants unlawfully and intentionally discriminated

against Plaintiff because of disability, within the meaning of the NYCHRL.

149.    As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well

as all other relief available under the law.

**FIFTH CAUSE OF ACTION**
Unlawful and Intentional Retaliation
New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of
2005, N.Y.C. Admin. Code § 8-101 et seq.
As Against All Defendants

150.    Plaintiff realleges and incorporates the foregoing allegations stated above herein.

151.    By the foregoing conduct, Defendants retaliated against Plaintiff for engaging in

activity protected by the NYCHRL known to them.

152.    As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well

as all other relief available under the law.

**SIXTH CAUSE OF ACTION**
Failure to Accommodate
New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of
2005, N.Y.C. Admin. Code § 8-101 et seq.
As Against All Defendants

153.    Plaintiff realleges and incorporates the foregoing allegations stated above herein.

154.    By the foregoing conduct, Defendant failed to accommodate Plaintiff's disability

known to them in a reasonable and effective manner that would pose no undue hardship

upon Defendants by permitting Plaintiff to work remotely.

155.    As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well

as all other relief available under the law.

**SEVENTH CAUSE OF ACTION**
Failure to Engage in Cooperative Dialogue
New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of
2005, N.Y.C. Admin. Code § 8-101 et seq.
As Against All Defendants

156.    Plaintiff realleges and incorporates the foregoing allegations stated above herein.

157.   N.Y.C. Admin. Code § 8-107(28) states as follows:

   Reasonable accommodation; cooperative dialogue.

(a) Employment. It shall be an unlawful discriminatory practice for an
    employer, labor organization or employment agency or an employee or
    agent thereof to refuse or otherwise fail to engage in a cooperative dialogue
    within a reasonable time with a person who has requested an
    accommodation or who the covered entity has notice may require such an
    accommodation:… (2)   Related to a disability as provided in subdivision 15
    of this section;
    ….

(d) Upon reaching a final determination at the conclusion of a cooperative
    dialogue pursuant to paragraphs (a) and (c) of this subdivision, the covered
    entity shall provide any person requesting an accommodation who
    participated in the cooperative dialogue with a written final determination
    identifying any accommodation granted or denied.

(e) The determination that no reasonable accommodation would enable the
    person requesting an accommodation to satisfy the essential requisites of
    a job or enjoy the right or rights in question may only be made after the
    parties have engaged, or the covered entity has attempted to engage, in a
    cooperative dialogue.

158.   Defendants failed to provide Plaintiff a written final determination in accordance

with N.Y.C. Admin. Code § 8-107(28).

159.   As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well

as all other relief available under the law.

**<u>EIGHTH CAUSE OF ACTION</u>**
Discriminatory Job Advertisement
New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of
2005, N.Y.C. Admin. Code § 8-101 et seq.
As Against Defendant HCMC Legal, Inc. and Defendant HC2, Inc., *d/b/a* Hire Counsel

160.   Plaintiff realleges and incorporates the foregoing allegations stated above herein.

161.   N.Y.C. Admin. Code § 8-107(1) states as follows:

Employment. It shall be an unlawful discriminatory practice

....

> (d)For any employer, labor organization or employment agency or an employee or agent thereof to declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for employment or to make any inquiry in connection with prospective employment, which expresses, directly or indirectly, any limitation, specification or discrimination as to... disability...or any intent to make any such limitation, specification or discrimination.

162.   By the foregoing conduct, Defendants violated N.Y.C. Admin. Code § 8-107(1)(d) by causing to be published and circulated the foregoing job advertisement that excluded him because of his disability.

163.   As a result of the foregoing, Plaintiff seeks declaratory and injunctive relief, as well as all other relief available under the law.

**<u>JURY DEMAND</u>**

Plaintiff seeks a jury trial on all issues triable by jury.

**<u>RELIEF SOUGHT</u>**

WHEREFORE, Plaintiff respectfully asks that the following relief be granted:

a)   Declare Defendants' foregoing conduct to be in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq., and the New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of 2005, N.Y.C. Admin. Code § 8-101 et seq.;

b)   Permanently enjoin Defendants from violating the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq., and the New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of 2005, N.Y.C. Admin. Code § 8-101 et seq by their foregoing conduct;

c)   Award Plaintiff compensatory and punitive damages under the Americans with

Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq., and the New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of 2005, N.Y.C. Admin. Code § 8-101 et seq.;

d) Award reasonable attorneys' fees, costs, expenses, and interest under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq., and the New York City Human Rights Law, as amended by the Local Civil Rights Restoration Act of 2005, N.Y.C. Admin. Code § 8-101 et seq.;

e) Award all other relief the Court deems necessary and just.

Dated:        Brooklyn, New York
              December 9, 2020

                                        Respectfully submitted,

                                By:     _____

                                        Zachary J. Liszka, Esq.
                                        33 Nassau Avenue, Fl 2
                                        Brooklyn, New York 11222
                                        347-762-5131
                                        zach@employeelawyer.nyc
                                        *Counsel for Plaintiff*